**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALEX BERENSON,<br><br>　　Plaintiff,<br><br>　　v.<br><br>JOSEPH R. BIDEN, JR., et al.,<br><br>　　Defendants. | Case No.: 1:23-cv-03048-JGLC |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF ALEX BERENSON'S
MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**

JAMES R. LAWRENCE, III
NC State Bar No. 44,560*
ANTHONY J. BILLER
NC State Bar No. 24,117*
ENVISAGE LAW
2601 Oberlin Rd, Suite 100
Raleigh, NC 27608
Phone: 919.755.1317
Facsimile: 919.782.0452
Email: jlawrence@envisage.law
　　　 ajbiller@envisage.law

SEAN P. GATES (SBN 186247)*
CHARIS LEX P.C.
301 N. Lake Ave., Ste. 1100
Pasadena, CA 91101
Phone: 626.508.1715
Facsimile: 626.508.1730
E-mail: sgates@charislex.com

DAVID J. HOFFMAN
Attorney at Law
254 W. 15th Street Apt 2C
New York, New York 10011
Phone: 917.701.3117
E-mail: djhoffman@djhoffmanlaw.com

* admitted pro hac vice

*Attorneys for Plaintiff Alex Berenson*

1

**BACKGROUND**

In this case, independent journalist and former *New York Times* reporter Plaintiff Alex Berenson brings claims against Defendants arising from Mr. Berenson's deplatforming from the social media platform Twitter. Mr. Berenson filed his original complaint in April 2023, (Dkt. 3), and Defendants moved to dismiss all of his claims, (Dkt. 38; Dkt. 40; Dkt. 44). On November 28, 2023, after the motions to dismiss were fully briefed, this Court adjourned the initial pretrial conference *sine die*. (Dkt. 66 at 2.) On March 19, 2024, this Court stayed this case "in its entirety," including third party discovery, pending the outcome of *Murthy v. Missouri*, 144 S. Ct. 1972 (2024), and *National Rifle Association v. Vullo*, 602 U.S. 175 (2024). (Dkt. 71 at 1.)

Since this Court's March 19 order there have been two sets of factual developments. First, X Corp.—the corporate successor to Twitter—voluntarily produced to Mr. Berenson and his counsel documents related to the journalist's ultimate suspension from the platform in August 2021. X Corp. produced the documents in separate tranches in June and July 2024. Among other things, those documents show that Defendants Andrew Slavitt and Scott Gottlieb, M.D. were jointly communicating with Twitter regarding accounts that they viewed as spreading COVID-19 misinformation, like Mr. Berenson's, in July 2021. Twitter's internal documents also show that Mr. Slavitt and Dr. Gottlieb repeatedly pressured a key Twitter lobbyist to censor Mr. Berenson's speech specifically and that at least that employee and his supervisor, the company's head lobbyist, viewed Mr. Slavitt, Dr. Gottlieb, and the White House to be working collaboratively. As the Twitter lobbyist put it, he hoped to "keep the target off our back." That same lobbyist was repeatedly in touch with Mr. Slavitt, Dr. Gottlieb, Robert Flaherty from the White House, and Surgeon General Murthy during the relevant period.

With respect to the fifth strike which led to Mr. Berenson's permanent ban from the platform, Twitter's archives reveal that the Twitter lobbyist pushed a junior employee to action

Mr. Berenson's speech quickly and without notifying more senior officials, even though Twitter's leadership—specifically Chief Executive Officer Jack Dorsey and Vijaya Gadde, the company's top lawyer—reviewed prior actions on Mr. Berenson's account. After the company banned Mr. Berenson on August 28, 2021, Twitter's records show that both Mr. Dorsey and Ms. Gadde concluded that the company banned Mr. Berenson in error.

The second set of relevant documents comes from the House Select Subcommittee on the Weaponization of the Federal Government. Those documents show how White House officials, including Mr. Slavitt and Mr. Flaherty, repeatedly pressured and coerced Facebook to censor speech regarding COVID-19 and the COVID-19 vaccines. Text messages between Facebook executive Nick Clegg and Mr. Slavitt from mid-to-late July show Mr. Slavitt acting as an intermediary between the White House and Facebook. Then, last week, on August 26, 2024, in a letter the Chairman of the House Judiciary Committee, Meta/Facebook Founder, Chairman, and Chief Executive Officer Mark Zuckerberg stated that senior Biden Administration officials repeatedly pressured his company to censor COVID-19-related speech.

## LEGAL STANDARD

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that "[t]he court should freely give leave when justice so requires." As the Second Circuit has explained, "[t]his is a liberal and permissive standard, and the only grounds on which denial of leave to amend has long been held proper are upon a showing of undue delay, bad faith, dilatory motive, or futility." *Sacerdote v. New York Univ.*, 9 F.4th 95, 115 (2d Cir. 2021) (internal quotation marks and alterations omitted); *see also Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016) ("Under this liberal standard, a motion to amend should be denied only if the moving party

has unduly delayed or acted in bad faith, the opposing party will be unfairly prejudiced if leave is granted, or the proposed amendment is futile.").

## ARGUMENT

Mr. Berenson's motion to amend meets Rule 15(a)(2)'s liberal standard. With respect to each category that might justify denial, Mr. Berenson brought this motion timely and in good faith pursuit of his case. Further, no scheduling order has been entered in this, which has been stayed in its entirety since March 19, 2024. (Dkt. 71.) In this regard, discovery has not yet commenced and Mr. Berenson's amendment of the factual allegations of his Complaint prejudices no defendant. Finally, the additional factual amendments proposed directly address concerns raised by the Supreme Court's recent rulings in *Murthy* and the standard for coercion articulated in *Vullo*.

### I.  Mr. Berenson's motion is timely and made in good faith pursuit of his case.

Mr. Berenson brings this motion prior to a scheduling order being entered in this case. Rule 16's "good cause" standard does not apply. *See Sacerdote*, 9 F.4th at 115 (noting that "[t]he period of 'liberal' amendment ends if the district court issues a scheduling order setting a date after which no amendment will be permitted"). Even if the stricter standard applied, Mr. Berenson's motion would still be timely.

Under Rule 16, "courts commonly find that a party acts diligently if it seeks leave to amend within approximately two months of acquiring new information of a new claim or defense." *AT&T Corp. v. Atos IT Solutions and Servs., Inc.*, __ F. Supp.3 __ (2024), 21-cv-4550 (VSB)(WL), 2024 WL 379952, at *7 (S.D.N.Y. Feb. 1, 2024).  However, courts regularly grant leave to amend despite "significantly longer delays." *Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193, 197 (S.D.N.Y. 2014) (delay of three months after opt in period expired still comports with diligence); *Jackson v. Roslyn Bd. Of Educ.*, 596 F. Supp. 2d 581, 586 (E.D.N.Y. 2009)

4

(motion to amend to add a more detailed factual chronology allowed where five months had passed since knowledge of the facts was admitted and ten months passed the scheduling order deadline where there was no undue prejudice).

With respect to allegations based on documents recently produced by X Corp. and information emerging from the House Select Subcommittee, including Mr. Zuckerberg's August 26, 2024 letter, the timeliness bar is satisfied, even under the stricter standard. Mr. Berenson is moving to amend his Complaint within two months or less of both events. *See Martell Strategic Funding LLC v. Am. Hospitality Acad.*, No. 12-CV-627 (VSB), 2017 WL 2937649, at * 2 (S.D.N.Y. July 10, 2017) (collecting cases demonstrating that moving to amend within two months comports with diligence); *Soroof Trading Dev. Co., Ltd. v. GE Microgen, Inc.*, 283 F.R.D. 142, 149 (S.D.N.Y. 2012) (moving to amend complaint within two months of motion effectively held in abeyance pending outcome of Court order comports with diligence standard); *compare Medicor, Inc. v. Access Pharmaceuticals, Inc.*, 290 F.R.D. 50, 53-54 (S.D.N.Y. 2013) (good cause not found where motion to amend was filed 16 months after deadline; 9 months after counsel realized other claims could have been made; no new information was acquired and proposed equitable causes of action would have impacted defendant's discovery strategy, discovery having closed); *Martell*, 2017 WL 2937649, at * 4 (good cause/diligence not shown where defendant moved to amend approximately two and a half years after purportedly learning of a new defense).

**II.   Granting Mr. Berenson leave to amend his original complaint will not prejudice Defendants.**

Under Rule 15(a), prejudice is "among the most important reasons to deny leave to amend." *AT&T*, 2024 WL 379952, at *20 (internal quotation marks omitted).  Prejudice arises when amendment causes the nonmoving party to "expend significant additional resources to

5

conduct discovery and prepare for trial, or when the proposed amendment causes significant delay to the disposition of the original claim or claims." *Id.* at *20 (internal quotations and citations omitted). Prejudice is more likely to be found when discovery has closed. *Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193, 200 (S.D.N.Y. 2014) (no prejudice where discovery had "barely begun"); *Martell Strategic Funding LLC*, 2017 WL 2937649, at *4 (amendment is more likely prejudicial after discovery has closed); *Soroof Trading*, 283 F.R.D. at 153 (no prejudice where discovery is ongoing and there is no new theory of recovery and the "operative facts at the foundation of the case remain the same.").

This case has been stayed in its entirety pending the decisions of the Supreme Court in *Murthy* and *Vullo*. (Dkt. 71.) No discovery has been conducted in this case. No additional claims or causes of action are being brought. No additional resources are required by Defendants to conduct discovery or to prepare for trial. As such, Defendants cannot show prejudice.

**III.    Denying Mr. Berenson leave to amend would prejudice Mr. Berenson.**

While Defendants would suffer no prejudice from amendment, the Supreme Court's recent rulings make clear that the additional allegations, which can be made based on recently acquired evidence, will further elucidate Mr. Berenson's claims. For example, in *Murthy*, the Supreme Court held that to demonstrate standing, the plaintiff must show that "a particular defendant pressured a particular platform to censor a particular topic *before* that platform suppressed a particular plaintiff's speech on that topic." 144 S. Ct. at 1988. Mr. Berenson's proposed First Amended Complaint enhances his original allegations in this regard, showing that particular Defendants pressured Twitter to suppress his speech, and that the highest-ranking executives at the company internally disagreed with the decision to ban the journalist.

Related, Ms. Culbertson's response is directly relevant to the standard articulated in the Supreme Court's ruling in *National Rifle Ass'n v. Vullo*, 602 U.S. 175 (2024), which requires that

6

the plaintiff "plausibly allege conduct that, viewed in context, could be reasonably understood to convey a threat of adverse government action in order to punish or suppress plaintiff's speech." *Id.* at 191. The response of Twitter officials to the White House communications or the communications of their proxies directly relates to whether Twitter reasonably perceived that the communications were coercive. Jack Dorsey and Vijaya Gadde's opposition to Mr. Berenson's fifth, ban-inducing strike is also probative of coercion, and squarely addresses the majority's concerns in *Murthy* regarding evidence that "subsequent restrictions are likely traceable to 'government-coerced enforcement' . . . rather than to [a social media company's] independent judgment." *Murthy*, 144 S. Ct. at 1992.

Finally, Mr. Slavitt's statements that he was in daily contact with White House officials in July 2021 after he had officially left his post in June 2021, along with his continued inclusion of his government email address on his email correspondence with Twitter raise a reasonable inference that he was a state actor whom Twitter officials viewed as speaking for the White House itself. Further, X Corp.'s production shows that Mr. Slavitt was leveraging his resources at New York City-based Town Hall Ventures to schedule phone calls with Twitter to discuss his concerns about so-called COVID-19 misinformation on the platform and, by extension, Mr. Berenson's speech.

## CONCLUSION

For the foregoing reasons, Mr. Berenson respectfully prays that this Court gives him leave to file his First Amended Complaint.

Respectfully submitted, this the 4th day of September, 2024.

By: */s/ James R. Lawrence, III*
JAMES R. LAWRENCE, III
NC State Bar No. 44,560*
ANTHONY J. BILLER
NC State Bar No. 24,117*
Envisage Law
2601 Oberlin Rd, Suite
Raleigh, NC 27608
Phone: 919.755.1317
Facsimile: 919.782.0452
Email: jlawrence@envisage.law
         ajbiller@envisage.law


SEAN P. GATES (SBN 186247)*
CHARIS LEX P.C.
301 N. Lake Ave., Ste. 1100
Pasadena, CA 91101
Phone: 626.508.1715
Facsimile: 626.508.1730
E-mail: sgates@charislex.com

DAVID J. HOFFMAN
Attorney at Law
254 W. 15th Street Apt 2C
New York, New York 10011
Phone: 917.701.3117
E-mail: djhoffman@djhoffmanlaw.com

* admitted pro hac vice