UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALEX BERENSON,

                Plaintiff,

   -against-

JOSEPH R. BIDEN, JR., ANDREW M. SLAVITT,
ROBERT FLAHERTY, VIVEK MURTHY, M.D.,
SCOTT GOTTLIEB, M.D., and ALBERT
BOURLA, PH.D, D.V.M.

                Defendants.

Case No. 1:23-cv-03048-JGLC

---

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF ALEX BERENSON'S
MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**

James P. Rouhandeh
Michael Scheinkman
David B. Toscano
Luca Marzorati
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

*Attorneys for Dr. Albert Bourla and
Dr. Scott Gottlieb*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ....................................................................................................1

BACKGROUND .........................................................................................................................3

       A.     Procedural History ...................................................................................3

       B.     Berenson's Attempts to Use This Lawsuit for an Improper Purpose ..........5

ARGUMENT .............................................................................................................................7

       I.     The Proposed Amendments Should Be Denied as Futile .......................................7

       II.    Berenson's Motion for Leave to Amend Was Unduly Delayed and
           Its Timing Has Prejudiced Defendants ..................................................................8

       III.   Berenson's Motion for Leave to Amend Evinces Bad Faith ................................11

CONCLUSION.........................................................................................................................13

**TABLE OF AUTHORITIES**

PAGE(S)

CASES

*Baiul v. NBCUniversal Media, LLC*,
   2014 WL 13111809 (S.D.N.Y. July 14, 2014)
   *aff'd*, 607 F. App'x 99 (2d Cir. 2015) ................................................................... 12

*Bay Harbor Mgmt. LLC v. Carothers*,
   474 F. Supp. 2d 501 (S.D.N.Y. 2007) ..................................................................... 9

*Black v. Ganieva*,
   2023 WL 2317173 (2d Cir. Mar. 2, 2023) ............................................................. 10

*Broidy Cap. Mgmt. LLC v. Benomar*,
   944 F.3d 436 (2d Cir. 2019) ..................................................................................... 7

*Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*,
   282 F.3d 83 (2d Cir. 2002) ....................................................................................... 7

*Eli Lilly & Co. v. Gottstein*,
   617 F.3d 186 (2d Cir. 2010) ............................................................................... 3, 11

*Ellis v. Chao*,
   336 F.3d 114 (2d Cir. 2003) ..................................................................................... 7

*Farricker v. Penson Dev., Inc.*,
   513 F. App'x 46 (2d Cir. 2013) ................................................................................ 9

*Hammerhead Enterprises, Inc. v. Brezenoff*,
   707 F.2d 33 (2d Cir. 1983) ....................................................................................... 2

*Juicy Couture, Inc. v. L'Oreal USA, Inc.*,
   2006 WL 2591478 (S.D.N.Y. Sept. 11, 2006) ...................................................... 12

*Knife Rts., Inc. v. Vance*,
   802 F.3d 377 (2d Cir. 2015) ..................................................................................... 7

*Morales v. N.Y. Univ.*,
   585 F. Supp. 3d 610 (S.D.N.Y. 2022) ...................................................................... 7

*PI, Inc. v. Quality Prod., Inc.*,
   907 F. Supp. 752 (S.D.N.Y. 1995) ........................................................................... 9

*Reid v. McKelvey*,
   2024 WL 4345585 (S.D.N.Y. Sept. 30, 2024) ......................................................... 7

*Ritchie Cap. Mgmt., L.L.C. v. Gen. Elec. Cap. Corp.*,
   821 F.3d 349 (2d Cir. 2016) ................................................................................... 10

*United States ex rel. Ladas v. Exelis, Inc.*,
  824 F.3d 16 (2d Cir. 2016) ................................................................................ 7

*Zilg v. Prentice-Hall, Inc.*,
  717 F.2d 671 (2d Cir. 1983) ............................................................................. 2

*In re Zyprexa Injunction*,
  474 F. Supp. 2d 385 (E.D.N.Y. 2007) ........................................................ 3, 11

### STATUTES & RULES

Fed. R. Civ. P. 15(a) ......................................................................................... 7

Fed. R. Civ. P. 15(a)(1)(B) ........................................................................ 3, 4, 8

Individual Rules and Practices in Civil Cases § 4(e) .............................. 3, 4, 8, 9, 10

## PRELIMINARY STATEMENT[1]

Litigation in federal court is not a free-style event. Yet Plaintiff Alex Berenson seeks to establish otherwise by disregarding the governing rules and disrupting the orderly progression of this action through his efforts to amend his complaint. Berenson's approach has forced Defendants to waste time and expense moving to dismiss a complaint that Berenson now wants to abandon, and preparing for an oral argument that was abruptly displaced by his motion for leave to amend.[2]

The same disdain for the uniform application of rules that animates the merits of Berenson's lawsuit is reflected in Berenson's motion for leave to amend. He has whipsawed the Court and Defendants by springing a motion for leave to file an amended complaint 12 days after submitting supplemental authority on a "pending" motion to dismiss his original complaint, and six business days before oral argument on Defendants' motions to dismiss. Berenson's motion for leave should be denied because, under applicable law, it is futile, unduly delayed, and evidences bad faith.

Berenson's motion for leave to amend is futile as to the claims against Dr. Gottlieb and Dr. Bourla because, as shown in their accompanying motion to dismiss, the Amended Complaint fails to state a claim against them.

Berenson's motion was also unduly delayed. In Berenson's opposition to Dr. Gottlieb and Dr. Bourla's August 2023 motion to dismiss his original complaint, he (improperly) invoked documents and allegations outside of his complaint, implying that he believed he needed more facts

---

[1] Unless otherwise noted, emphasis has been added to quotations, and internal quotations, brackets, citations, and footnotes have been omitted.

[2] In addition to bringing claims against Dr. Gottlieb and Dr. Bourla, Berenson brings constitutional claims against President Joseph R. Biden, Jr., Dr. Vivek Murthy (the Surgeon General of the United States), Andrew M. Slavitt (the former White House Senior Advisor to the COVID-19 Response Coordinator), and Robert Flaherty (the former White House Director of Digital Strategy) (collectively, the "Government Defendants" and with Dr. Gottlieb and Dr. Bourla, the "Defendants").

to state viable claims.  But nothing had forced him to file his original complaint in mid-April 2023 in light of its acknowledged deficiency.  Nor did anything prevent him from timely exercising his right to amend his complaint in response to Defendants' motions to dismiss.

Instead, Berenson flouted this Court's rule requiring him to state his intention regarding amendment within 10 days of the motions.  Berenson then waited a year—until six business days before oral argument on the dismissal motions—to move for leave to amend.  Berenson attempts to excuse that delay—and the disruptive timing of his motion—by claiming that he received additional internal documents from X Corp. (Twitter's corporate successor), in exchange for an agreement to publish articles on its platform.  But Berenson's explanation of his agreement with X does nothing to dispel undue delay on his part, much less establish good cause to amend his complaint on the eve of oral argument.  To the contrary, accepting Berenson's proffered excuse would leave him free to amend his complaint if, for example, he receives *more* documents under that agreement *after* the current round of briefing is completed and immediately before oral argument.

Finally, Berenson's motion for leave to amend is brought in bad faith because it (futilely) seeks to perpetuate a lawsuit that itself constitutes an abuse of federal judicial process.  As shown in Dr. Gottlieb and Dr. Bourla's accompanying brief in support of their motion to dismiss, Berenson's claims against them plainly lack merit.  Berenson has sued Dr. Gottlieb for conduct that, under binding Second Circuit precedent, constitutes the protected exercise of First Amendment rights.  *See Hammerhead Enters., Inc. v. Brezenoff*, 707 F.2d 33 (2d Cir. 1983); *Zilg v. Prentice-Hall, Inc.*, 717 F.2d 671 (2d Cir. 1983) (following *Hammerhead*).  Berenson's bootstrapped theory of Dr. Bourla's purported liability—namely, that "[u]pon information and belief," Dr. Gottlieb exercised his First Amendment with Dr. Bourla's "full knowledge and approval," ECF No. 80-1 ¶ 214—is doubly defective.

Berenson's bad faith is demonstrated by the fact he has admitted that he filed this action for the improper purpose of obtaining discovery from nonparty Pfizer Inc. ("Pfizer") about its development of its COVID-19 vaccine. Using federal litigation to achieve this and other improper objectives, including to increase his followers and subscribers and otherwise advance his writing career, without any valid claim constitutes bad faith. Nor is this Berenson's first misuse of judicial process: he concocted a scheme to serve what the Second Circuit criticized as a "sham" subpoena as an "end run around [a] protective order" in order to publish confidential discovery material produced by another pharmaceutical company. *Eli Lilly & Co. v. Gottstein*, 617 F.3d 186, 192 (2d Cir. 2010). His present abuse of the legal process should not be countenanced, especially given his past conduct, which the district judge described as "brazen" and "reprehensible." *In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 428 (E.D.N.Y. 2007) (Weinstein, J.).

## BACKGROUND

### A.  Procedural History

Berenson filed his original complaint on April 14, 2023. ECF No. 3. Defendants moved to dismiss that complaint on August 21, 2023. ECF Nos. 38–45. Berenson did not provide notice to the Court and Defendants within 10 days of the motions to dismiss as to whether he would amend his complaint or rely on his original complaint. *See* Individual Rules and Practices in Civil Cases § 4(e) (hereinafter "Rule 4(e)"). Nor did Berenson amend his complaint in response to the motions. *See* Fed. R. Civ. P. 15(a)(1)(B).

Berenson opposed the motions to dismiss on October 4, 2023. ECF Nos. 50–54. In opposing Dr. Gottlieb and Dr. Bourla's motion, Berenson did not wholly "rely on the pleading being attacked." Rule 4(e). Instead, he improperly relied on allegations outside of his original complaint and documents not incorporated into that complaint that he stated he would include in an amended complaint. ECF No. 54 at 11–12, 20–21, 23, 24 & n.4, 27–28 (citing ECF No. 50 and its exhibits).

3

Those documents included a document that he cites in the proposed Amended Complaint he proffered nearly one year later. ECF No. 50-3 at 3; ECF No. 80-1 ¶ 189.

In addition, after having waived his right to file an amended complaint under Rule 15(a)(1)(B), and disregarded Rule 4(e), he "pray[ed]" in his opposition brief for "leave to amend his complaint." ECF No. 54 at 29. By November 22, 2023, the motions to dismiss Berenson's original complaint were fully briefed. ECF. Nos. 57, 59, 63. On March 19, 2024, the Court "stay[ed] this action in its entirety" "[i]n light of the Supreme Court's impending decisions in *Murthy v. Missouri*, No. 23-411 and *National Rifle Association v. Vullo*, No. 22-842, whose outcome will likely affect this case." ECF No. 71 at 1.

On June 24, 2024, Berenson posted an article on X discussing "newly released internal documents from X."[3] Although Berenson did not specify when he obtained those documents, he stated in support of his motion for leave to amend that "X Corp. produced the documents in separate tranches in June and July 2024." ECF No. 81 at 2. In his June 2024 article, Berenson argued that the documents "provide crucial perspective on" *Murthy v. Missouri*, which "the Supreme Court is expected to decide" "[w]ithin days."[4] Berenson added: "I intend to use the newly released documents to amend" his complaint.[5]

At the same time, Berenson's counsel was working cooperatively with Defendants to find a mutually agreeable date for oral argument on the motions to dismiss. On July 8, 2024, the Court scheduled oral argument for September 12, 2024. ECF No. 75. In an August 23, 2024 letter to

---

[3]    @AlexBerenson, *X* (Jun. 24, 2024, 3:40 PM), https://x.com/AlexBerenson/status/1805325255990460927.

[4]    *Id.*

[5]    *Id.*

the Court, Berenson "apprise[d] the Court of supplemental authority relevant to the Federal De-fendants' [then-] ***pending motion to dismiss***." ECF No. 79. The letter did not mention that Ber-enson intended to amend the complaint that was subject to the "pending motion to dismiss." On August 27, 2024, Berenson tweeted about "new attention to Berenson v Biden" and teased "Amended complaint within days."[6]

On September 3, 2024, Berenson posted an article on X about other "internal Twitter doc-uments" that "X voluntarily provided" to Berenson.[7] Berenson explained that he obtained the documents pursuant to a deal with X under which "[i]n return for providing the documents, X asked only that I publish this article here on X rather than another platform and that I redact some junior and mid-level employee names." *Id.* Berenson also wrote that the documents "will play a crucial role in my amended complaint in Berenson v. Biden." *Id.*

On September 4, 2024—six business days before oral argument—Berenson moved for leave to amend his complaint to add allegations based on the documents he claims X provided in June and July 2024, and also based on a document he proffered in opposition to Dr. Gottlieb and Dr. Bourla's motion to dismiss on October 4, 2023. ECF No. 80; ECF No. 80-1 ¶ 189; ECF No. 50-3 at 3.

**B.      Berenson's Attempts to Use This Lawsuit for an Improper Purpose**

On the day that Berenson first tried to file this lawsuit, he appeared on *Tucker Carlson Tonight*, revealing that he was using this litigation as a back door to obtain information from  non-party Pfizer about the development of its COVID-19 vaccines. In that interview, Berenson said that "[t]his lawsuit is probably the only lawsuit that can … get all of us to have some idea of what

---

[6]      @AlexBerenson, *X* (Aug. 27, 2024 9:46 AM), https://x.com/AlexBerenson/status/1828428774591078486.

[7]      @AlexBerenson, *X* (Sept. 3, 2024 3:16 PM), https://x.com/AlexBerenson/status/1831048658898616759.

Pfizer actually knew about the failure of the vaccines in 2021 and what they were telling the White House."[8]  He admitted that his primary goal was to "survive the motion to dismiss" to obtain "discovery that nobody else is going to be able to get."[9]  Berenson touted this lawsuit on Twitter as "a unique chance at winning discovery with Pfizer."[10]  He echoed that claim in an interview on Fox Business News the same day:

> My lawsuit … in one way … has something that no other lawsuit *can* have because … Pfizer executives are included:  Pfizer has immunity, basically, from any vaccine-related lawsuit.  So if we want to know what they knew as these vaccines were losing efficiency in 2021 … this is going to be the only lawsuit that might provide a way in.  If I can get past the motion to dismiss, I will be able to ask Pfizer to tell me what they were talking to senior officials in the White House about—not just about me, but about these vaccines.[11]

On its website, Fox captioned the video of Berenson's appearance:  "My lawsuit might be the only way into Pfizer: Alex Berenson."[12]  Berenson reiterated that claim on August 9, 2023, promoting this lawsuit as "the only—and I mean ONLY—civil lawsuit with a chance to force @Pfizer to reveal what it knew, or at least what it told the government in 2021."[13]  To that end, Berenson has orchestrated an ongoing publicity, merchandising, and fundraising campaign that commenced months before this suit was filed.[14]

---

[8]  Tucker Carlson Tonight (Fox News television broadcast Apr. 12, 2023).

[9]  Tucker Carlson Tonight (Fox News television broadcast Apr. 12, 2023); *see also* @AlexBerenson, *Twitter* (Nov. 22, 2022 8:02 PM), https://x.com/AlexBerenson/status/1595221187377991681 ("[S]oon enough we should get to depose Tony [Fauci] for ourselves along with @ScottGottliebMD and @ASlavitt and even @AlbertBourla (inshallah!) ….").

[10]  @AlexBerenson, *Twitter* (Apr. 12, 2023 3:35 PM), https://x.com/AlexBerenson/status/1646235665242243072.

[11]  Fox Business, *My Lawsuit Might Be the Only Way Into Pfizer: Alex Berenson* (Apr. 12, 2023), https://www.fox-business.com/video/6324887365112.

[12]  *Id.*

[13]  @AlexBerenson, *Twitter* (Aug. 9, 2023 10:52 AM), https://x.com/AlexBerenson/status/1689288476686942208.

[14]  Alex Berenson, *Looks Even Better Than I Hoped*, Unreported Truths (Oct. 21, 2022), https://alexberenson.sub-stack.com/p/looks-even-better-than-i-hoped/comments; Alex Berenson, *Fauci & Gottlieb & Slavitt & Bourla*, Unreported Truths (Oct. 17, 2022), alexberenson.substack.com/p/fauci-and-gottlieb-and-slavitt-and ("I'm printing a limited number of t-shirts and coffee mugs which I may auction off to support the coming lawsuit.").

## **ARGUMENT**

Under Federal Rule of Civil Procedure 15(a), "[a] court should 'freely give leave'" to amend a complaint "'when justice so requires, but it may, in its discretion, deny leave to amend for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Reid v. McKelvey*, 2024 WL 4345585, at \*4 (S.D.N.Y. Sept. 30, 2024); *see also United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016) (A court should exercise its discretion to deny leave "in instances of futility, undue delay, bad faith or dilatory motive."). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019). Because Berenson's proposed amendments are futile and the result of undue delay, and because Berenson proffers his Amended Complaint in bad faith, his motion for leave to amend his complaint should be denied.

### **I.    The Proposed Amendments Should Be Denied as Futile**

The Court should exercise its "considerable discretion" to deny Berenson's motion. *Knife Rts., Inc. v. Vance*, 802 F.3d 377, 389 (2d Cir. 2015). "[I]t is well established that leave to amend a complaint need not be granted when amendment would be futile." *Morales v. N.Y. Univ.*, 585 F. Supp. 3d 610, 613 (S.D.N.Y. 2022) (quoting *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003) (S.D.N.Y. 2022). "A proposed amendment is futile when 'it could not withstand a motion to dismiss pursuant to Rule 12(b)(6).'" *Morales*, 585 F. Supp. 3d at 613 (citing *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002)).

For the reasons set forth in Dr. Bourla and Dr. Gottlieb's renewed motion to dismiss, the proposed amendments fail to plead sufficient facts to state a plausible claim for relief and are, therefore, futile.

7

**II.    Berenson's Motion for Leave to Amend Was Unduly Delayed and
Its Timing Has Prejudiced Defendants**

Under Rule 15, Berenson had a right to amend his original complaint within 21 days of

Defendants' motions to dismiss it, which were filed in August 2023.  *See* Fed. R. Civ. P.

15(a)(1)(B).  The rule's drafters explained that this deadline "force[s] the pleader to consider care-

fully and promptly the wisdom of amending to meet the arguments in the motion," and recognized

that "[a] responsive amendment may avoid the need to decide the motion or reduce the number of

issues to be decided, and will expedite determination of issues that otherwise might be raised se-

riatim."  *Id.* (advisory committee's note to 2009 amendment).

Similarly, Rule 4(e) of the Court's Individual Rules and Practices in Civil Cases—which

Berenson ignores in his papers in support of his motion for leave to amend[15]—placed Berenson

on express notice that the time to amend his complaint was in opposition to Defendants' motions

to dismiss:

> If a motion to dismiss is filed, the non-moving party shall, within 10 days of receipt
> of the motion, notify the Court and its adversary in writing whether (1) it intends to
> file an amended pleading and when it will do so; or (2) it will rely on the pleading
> being attacked.  ***Non-moving parties are on notice that declining to amend their
> pleadings to respond to a fully briefed argument in the motion to dismiss may
> well constitute a waiver of their right to use the amendment process to cure any
> defects that have been made apparent by the briefing.***

Rule 4(e) embodies a recognition that a plaintiff's lack of transparency regarding its intent to

amend its complaint often imposes unnecessary effort and expense on the Court and the defend-

ants.

Here, Berenson has flouted both the letter and spirit of Rule 4(e) by:

- failing to provide any notice regarding his intent to amend his complaint within 10
  days of Defendants' August 21, 2023 motions to dismiss his original complaint;

---

[15]    Dr. Bourla and Dr. Gottlieb previously cited Rule 4(e) in the reply brief in support of their motion to dismiss
Berenson's original complaint.  ECF No. 59 at 10.

- neither amending his complaint nor "rely[ing] on the pleadings being attacked" in October 2023, but instead improperly seeking to defend his claims with allegations and documents outside his complaint;

- failing to notify the Court and Defendants of his intent to seek to amend his complaint before the Court ruled on the pending motions to dismiss;

- continuing actively to defend his original complaint by agreeing with Defendants in early July 2024 on proposed dates for oral argument on the motions, and by submitting supplemental authority on one of the "pending motions to dismiss" on August 23, 2024; and

- waiting until six business days before oral argument on the motions to dismiss his original complaint to move for leave to amend that complaint.

Berenson's defiance of the rule and its animating principle of transparency has prejudiced Defendants, in forcing them both to file reply briefs in support of their motions to dismiss a complaint that Berenson now disavows, and to prepare for oral argument on these motions that was derailed by Berenson's motion for leave to amend.

Berenson had "a full and fair opportunity to investigate this matter"—both before filing his original complaint and when deciding not to amend his complaint in response to Defendants' motions to dismiss—and he "never asked for additional time to conduct further investigation." *Bay Harbor Mgmt. LLC v. Carothers*, 474 F. Supp. 2d 501, 503 (S.D.N.Y. 2007). Indeed, Berenson engaged in more pre-complaint investigation than many other plaintiffs, including because he obtained discovery from Twitter in his prior lawsuit.

Further, "defendants would be prejudiced if leave to amend were granted" because "[t]heir motion[s] to dismiss the … complaint had been fully briefed and defense counsel had prepared for oral argument." *Id.*; *see also Farricker v. Penson Dev., Inc.*, 513 F. App'x 46, 48 (2d Cir. 2013) (affirming denial of leave to amend where the plaintiff's "request to amend the complaint came nine months after [the defendant] filed its motion to dismiss, which had been fully briefed"); *PI, Inc. v. Quality Prod., Inc.*, 907 F. Supp. 752, 765 (S.D.N.Y. 1995) (concluding that where "motions

9

to dismiss were fully briefed and argued, at considerable expense, before the plaintiff sought to amend its complaint," the "timing demonstrates that [the motion for leave to amend] is clearly a dilatory tactic to avoid the dismissal of this action").

Berenson asserts that his motion for leave to amend is timely simply because "X Corp. produced the documents in separate tranches in June and July 2024." ECF No. 81 at 2. But Berenson appears to be asking the Court and Defendants to take on faith that those dates do not themselves reflect any delay by Berenson. Indeed, he fails to provide any explanation how that timing resulted from his deal with X Corp., under which the company provided him with documents and he agreed to post articles regarding the documents on X's platform.[16] Nor did Berenson ever notify the Court or Defendants that he "intend[ed] to file an amended pleading and when [he] will do so." Rule 4(e). While Berenson baited his X and Substack readers with teasers about an amended complaint, his counsel continued to litigate based on his original complaint until his motion for leave to amend was filed. None of the cases that Berenson cites, *see* ECF No. 81 at 4–5, involve a plaintiff who prioritized using newly obtained documents for a social media post months before proffering an amended complaint.

The Second Circuit has recognized that district courts may deny leave to amend where local rules advise of the risk of forgoing an opportunity to amend by responding to a motion to dismiss. *Black v. Ganieva*, 2023 WL 2317173, at *3 (2d Cir. Mar. 2, 2023); *see also Ritchie Cap. Mgmt., L.L.C. v. Gen. Elec. Cap. Corp.*, 821 F.3d 349, 352 (2d Cir. 2016) (approving of local rule regarding leave to amend). Defendants filed their motions to dismiss on August 21, 2023. At no time prior to September 4, 2024—more than one year later—did Berenson provide notice to the

---

[16]    @AlexBerenson, *X* (Sept. 3, 2024 3:16 PM), https://x.com/alexberenson/status/1831048658898616759.

Court and Defendants that he intended to seek leave to amend his complaint.  Instead, by responding to Defendants' motions to dismiss on October 4, 2023, Berenson waived the right to amend his complaint.

### III.    Berenson's Motion for Leave to Amend Evinces Bad Faith

By seeking leave to amend his complaint, Berenson is seeking to continue litigation that—by his own admission—is intended as a vehicle to obtain discovery from nonparty Pfizer about its development of its COVID-19 vaccine.  Berenson's admitted abuse of process constitutes bad faith and warrants denial of his motion for leave to amend.

Berenson has a history of abusing federal judicial process.  When reporting on a case before Judge Weinstein, Berenson circumvented a protective order that only allowed the distribution of confidential discovery materials in response to a subpoena.  *See generally In re Zyprexa Injunction*, 474 F. Supp. 2d 385 (E.D.N.Y. 2007).  Exploiting this provision, Berenson connected an expert witness in possession of discovery material with an attorney willing to issue a sham subpoena.  *See id.* at 392.  The subpoena was expedited so the defendant "was deliberately kept in the dark" and "would be unable to make a timely objection."  *Id.*  The expert passed the documents to the attorney, who passed them to Berenson, who quickly published excerpts and summaries.  *See id.* at 392–93.  Berenson instructed his coconspirators not to share the documents with other news sources so that he would have the "scoop" on the story.  *Id.* at 404.  After the conspiracy was uncovered, Judge Weinstein described Berenson's conduct as "reprehensible" and a "brazen flouting of th[e] court's protective order," *id.* at 428, and the Second Circuit criticized Berenson's use of a "sham" subpoena "in planning an end run around the protective order," *Eli Lilly & Co. v. Gottstein*, 617 F.3d 186, 192 (2d Cir. 2010).

When confronted with his past misconduct here, Berenson made no effort to deny or explain it, and instead claimed that it was "17 years ago" and thus "not at issue in this litigation."

ECF No. 54 at 14. Berenson also dismissed the criticisms of him by the Second Circuit and Judge Weinstein as "complaints [that] arise largely from articles that Mr. Berenson wrote for *The New York Times* in 2006"—as if federal judges' condemnations of his abuse of the judicial process are mere "complaints" that should be overlooked because, in Berenson's telling, the only relevant fact is that the fruits of his conduct were published in a prominent newspaper. ECF No. 70 at 1.

Berenson once again is engaged in abuse of process here. As explained above, his lawsuit is a self-declared attempt to obtain documents, including documents from nonparty Pfizer related to the development of its COVID-19 vaccine. To that end, Berenson has touted this case as:

- "a unique chance at winning discovery with Pfizer";

- "the only – and I mean ONLY – civil lawsuit with a chance to force [Pfizer] to reveal what it knew, or at least what it told the government in 2021"; and

- "the only lawsuit that can … get all of us to have some idea of what Pfizer actually knew about the failure of the vaccines in 2021 and what they were telling the White House."

*See supra* at 8–9. Berenson's motion for leave to amend is an attempt to continue that abuse and should be denied for that reason.

This Court (per Judge Forrest) made a finding of bad faith when a plaintiff used litigation "as a forum to achieve her objectives in other lawsuits when she had no valid claim of injury based on the claims actually alleged in this Court." *Baiul v. NBCUniversal Media, LLC*, 2014 WL 13111809, at *5 (S.D.N.Y. July 14, 2014), *aff'd*, 607 F. App'x 99 (2d Cir. 2015). Although Judge Forrest made her bad faith finding for purposes of a statutory award of attorney's fees, the reasoning equally supports a finding of bad faith for purposes of Rule 15 based on Berenson's "use of this litigation as a forum to achieve [his] objectives [of advancing his writing career] when [he has] no valid claim." 2014 WL 13111809, at *5; *see also Juicy Couture, Inc. v. L'Oreal USA, Inc.*, 2006 WL 2591478, at *7 (S.D.N.Y. Sept. 11, 2006) (finding, as a basis for granting statutory

12

attorney's fees, that a plaintiff "acted in bad faith and for an improper purpose" where "[i]t chose to use litigation to achieve a commercial objective when it had no valid claim of injury").

## <u>CONCLUSION</u>

For the reasons set forth above, Dr. Gottlieb and Dr. Bourla respectfully submit that the Court should deny Berenson's motion for leave to amend.


Dated: October 11, 2024          Respectfully submitted,
      New York, New York

                                  **DAVIS POLK & WARDWELL LLP**


                                  By: */s/ James P. Rouhandeh*
                                  James P. Rouhandeh
                                  Michael Scheinkman
                                  David B. Toscano
                                  Luca Marzorati
                                  DAVIS POLK & WARDWELL LLP
                                  450 Lexington Avenue
                                  New York, New York 10017
                                  (212) 450-4000

                                  *Attorneys for Dr. Albert Bourla and*
                                  *Dr. Scott Gottlieb*

13